Filing # 125729390 E-Filed 04/28/2021 08:26:54 AM

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR COLLIER COUNTY, FLORIDA – CIVIL DIVISION

AMICA MUTUAL INSURANCE COMPANY,
    PETITIONER,

vs.

Case Number:
Division:

TRAVELERS INDEMNITY COMPANY OF AMERICA,
    RESPONDENT,

and

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
    RESPONDENT,

and

CHARLES SPANGLER,
    RESPONDENT,

and

CYPRESS ASSOCIATES, LLC dba "Valencia Golf & Country Club,"
    RESPONDENT,

and

CHARLA R. HENNINGSEN as PERSONAL REPRESENTATIVE
OF THE ESTATE OF CHARLES HENNINGSEN,
    RESPONDENT,                           /

## PETITION FOR DECLARATORY RELIEF AND DECREE

COMES NOW, the Petitioner, AMICA MUTUAL INSURANCE COMPANY (hereinafter "AMICA") by and through its undersigned counsel, and hereby files this Petition for Declaratory Relief against TRAVELERS INDEMNITY COMPANY OF AMERICA (hereinafter "TRAVELERS"), CHARLES SPANGLER, CYPRESS ASSOCIATES, LLC dba "Valencia Golf & Country Club," (hereinafter "VGCC"), as well as CHARLA R. HENNINGSEN in her capacity as PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES HENNINGSEN, and avers as follows:

### I.    Parties and Jurisdiction

1. This is an action for declaratory relief pursuant to the provisions of Chapter 86, Florida Statutes.

2. The dispute is in excess of the minimal jurisdictional limits of this Court, and this Court is a court of general jurisdiction to hear petitions for declaratory relief pursuant to Fla. Stat. § 86.011.

FILED: COLLIER COUNTY, CRYSTAL K. KINZEL, CLERK, 04/28/2021 08:26:54 AM

3. At all material times thereto to the facts alleged in this Petition, AMICA was and is a foreign insurer lawfully conducting business in the state of Florida as well as in Collier County, Florida.

4. At all material times to the facts alleged in this Petition, TRAVELERS was and is a foreign insurer lawfully conducting business in the state of Florida as well as in Collier County, Florida.

5. CHARLES SPANGLER is an individual and a resident of Collier County, Florida.

6. CHARLES SPANGLER was an AMICA insured as AMICA issued an HO-6 Homeowners Insurance Policy to CHARLES SPANGLER bearing policy number 61070921FF (the "underlying AMICA policy") prior to the November 7, 2020 tort event. A copy of the policy is attached hereto as **Exhibit A.001-.104.**

7. CHARLES SPANGLER was also insured with AMICA via a "Personal Umbrella Liability Policy" bearing policy number 7105092240 ("AMICA PULP" or "excess" AMICA policy) prior to the November 7, 2020 tort event. A copy of the policy is attached hereto as **Exhibit B.001-.030.**

8. CHARLES SPANGLER is a Florida resident for purposes of jurisdiction.

9. CHARLES HENNINGSEN was an individual who passed on or about November 22, 2020 in Ft. Myers, Lee County, FL.

10. Upon information and belief, Charla R Henningsen was the spouse of Charles Henningsen, and now CHARLA R. HENNINGSEN is the PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES HENNINGSEN.

11. A probate action is pending in Collier County, Florida bearing case number 11-2021-CP-000953-0001-XX (the "ESTATE") naming CHARLA R. HENNINGSEN as the Personal Representative. Thus, CHARLA R. HENNINGSEN, as PERSONAL REPRESENTATIVE OF THE ESTATE, is a Florida party for jurisdictional purposes.

12. CYPRESS ASSOCIATES, LLC dba "Valencia Golf & Country Club" operates a golf course and county club, which is open to the public, located at 1725 Double Eagle Trail, Naples, FL 34120.

13. VGCC is a Florida resident for jurisdictional purposes.

14. VGCC was a TRAVELERS insured as TRAVELERS issued a commercial policy of insurance to VGCC bearing policy number Y-660-2R382601-TIA-20 (the underlying TRAVELERS policy). A copy of the policy is attached hereto as **Exhibit C.001-.095.**

15. CHARLES SPANGLER was an invitee at the VGCC while playing a round of golf at VGCC on November 7, 2020.

16. CHARLES SPANGLER qualified as an insured under the TRAVELERS policy on November 7, 2020 based on his permitted use of a golf cart on November 7, 2020 while an invitee at VGCC consistent with the language as well as the terms and conditions of the underlying TRAVELERS policy.

17. Upon information and belief, the golf cart was owned and/or leased by VGCC.

18. TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA also known as TRAVELERS issued an umbrella policy to VGCC bearing policy number CUP-2R416497-20-14 (the TRAVELERS EUP or "excess policy"). A copy of the policy is attached hereto as **Exhibit D.001-.068.**

19. CHARLES SPANGLER qualified as an insured under both the underlying TRAVELERS policy as well as the TRAVELERS EUP.

20. This Court has jurisdiction as the sum at issue exceeds $30,000.00.

21. Venue is proper in Naples, FL pursuant to Fla. Stat. §§ 47.011 as the cause of action accrued in or near Naples, Collier County, Florida.

22. The Petitioner and all Respondents (cumulatively the "Parties" or singularly the "Party") are all Parties possessing an interest in the outcome of this Petition for Declaratory Relief, and therefore all Parties are appropriately named in this action and shall be bound by its outcome in the Twentieth Judicial Circuit in and for Collier, County, Florida, which shall construe the rights and obligations of the parties therein in conjunction with the insurance policies at issue pursuant to Florida law.

## II. The Underlying Tort Event & Demand from the Estate to AMICA to Tender Policy Benefits

23. On November 7, 2020, CHARLES HENNINGSEN rented a golf cart to participate in a round of golf at VGCC accompanied by CHARLES SPANGLER as well as two others.

24. All individuals were invitees at VGCC.

25. Although CHARLES HENNINGSEN rented the golf cart from VGCC, CHARLES SPANGLER was also a permissive user of the golf cart on occasion during the round of golf on November 7, 2020.

26. As function of the language of <u>both</u> TRAVELERS policies that insured VGCC, CHARLES SPANGLER qualified as an insured under the VGCC policy on November 7, 2020 pursuant to the terms and provisions of the policies because of his permissive use of the golf cart while an invitee of the VGCC.

27. As function of the language of the both AMICA policies, CHARLES SPANGLER qualified as an insured under the both the underlying AMICA policy and the AMICA PULP policy for his use of the golf cart at VGCC on November 7, 2020 and subsequent alleged tortious acts.

28. Upon information and belief, CHARLES SPANGLER appears to have accidentally pulled the golf cart forward running over CHARLES HENNINGSEN while both individuals were on the 17th green of the VGCC on November 7, 2020.

29. CHARLES HENNINGSEN was subsequently transported to Lee Memorial Hospital with serious but non-life-threatening injuries on the date of the event.

30. Unfortunately, Charles Henningsen later passed on or about November 22, 2020 while admitted to Lee Memorial Hospital in Lee County, Ft. Myers, FL.

31. On January 29, 2021, counsel on behalf of THE ESTATE OF CHARLES HENNINGSEN made a wrongful death claim on behalf of the ESTATE to AMICA who insured CHARLES SPANGLER on November 7, 2020 for the alleged tortious events that took place at the country club to wit: the negligent operation of a golf cart resulting in injuries and the ultimate death of CHARLES HENNINGSEN.

III. <u>AMICA'S Demand to TRAVELERS to provide a Joint Defense and to Provide a Pro-rata Sharing of Loss that was Wholly Rejected by TRAVELERS</u>

32. On February 25, 2021, counsel for AMICA forwarded a demand to TRAVELERS for a joint defense based on language of the underlying policies in response to the demand made by the ESTATE OF CHARLES HENNINGSEN on January 29, 2021. Thus, The January 29, 2021 demand on

behalf of THE ESTATE OF CHARLES HENNINGSEN was also tendered by AMICA to TRAVELERS for consideration and response.

33. AMICA also requested that TRAVELERS agree to share the policy limits on a pro-rata basis predicated upon the underlying language in each underlying policy as applicable to indemnity and defense pursuant terms and provisions of each policy including the **"Other Insurance"** language found in each respective policy.

34. On March 17, 2021, Jon Nawrocki of TRAVELERS declined the pro-rata request as follows:

> …… We agree that Charles Spangler has insured status on our policies. Based on the language cited above, it is Travelers' position that both Amica policies would need to be exhausted in this matter before the above noted Travelers policies would be reached.
>
> A true and correct copy of the email denial is attached hereto as **Exhibit E.001.**

28. TRAVELERS admits that CHARLES HENNINGSEN <u>qualified as an insured</u> under both policies, but TRAVELERS <u>contests</u> the priority of coverages by and among the AMICA polices and the TRAVELERS policies. <u>Id</u>.

29. AMICA interprets that the underlying policies "pro-rate" in response to the demand from the ESTATE while TRAVELERS takes the position <u>that both</u> its underlying policy and excess policy are not triggered until the underlying AMICA policy and excess AMICA policy have both been exhausted, i.e., TRAVELERS is excess over AMICA for the tort claim presented by the ESTATE for both the underlying TRAVELERS policy and the excess TRAVELERS policy. <u>Id</u>.

IV. **<u>The Insurance Policies at Issue & Priority of Coverage By and Among the Policies</u>**

A. **Primary Polices (the Underlying Polices)**

(i) **The Underlying Travelers Policy**

30. The underlying TRAVELERS is a "General Liability" policy that utilizes the following broad language via its Insuring Agreement to provide coverage for all claims unless specifically excluded:

SECTION I - COVERAGES
COVERAGE A- BODILY INJURY AND PROPERTY
DAMAGE LIABILITY

**1. Insuring Agreement**
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage "to which this insurance applies.

See, **C.014**

31    Consistent with commercial general liability forms of this type, bodily injury arising out of use of a "auto" is excluded:

g. Aircraft, Auto Or Watercraft
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading". This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

See, **C.017.**

32.    This exclusion does not limit or restrict injuries arising from use of a golfmobile, i.e., "golf cart" because an auto is defined in the policy as a "land motor vehicle, trailer or semitrailer designed for travel on public road…." Id.  Therefore, liability coverage for use of a golfcart is not specifically excluded under the standard CGL coverage, and thus, coverage is in place on a primary basis pursuant to the underlying TRAVELRS policy unless the golf cart is designed for use primarily on a public road.  Id.

33.    It is superfluous to address the definition of "auto" as applicable to the use of a golf cart in this liability context because this policy is specifically endorsed for the use of golf carts as a function of the **XTEND ENDORSEMENT FOR GOLF OR COUNTRY CLUB FACILITIES.**  See, **C.038.**

34.    The **XTEND ENDORSEMENT** is manuscripted language that broadens the traditional commercial general liability insurance to apply to the risks associated with golf and country clubs that are not otherwise addressed clearly in standard commercial generally liability policies.  The general language of the endorsement includes the following language:

GENERAL DESCRIPTION OF COVERAGE - This endorsement broadens coverage. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to this Coverage Part, and these coverage broadening provisions do not apply to the extent

that coverage is excluded or limited by such an endorsement. The following listing is a general coverage description only. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered.
........

C. Who Is An Insured - Golf Pros; Tennis Pros;
Members; Users Of Golfmobiles (Excess Basis)

Id.

35.	Provision C of the **XTEND ENDORSEMENT** provides specifically

**C. WHO IS AN INSURED – GOLF PROS; TENNIS
PROS; MEMBERS; USERS GOLFMOBILES (EXCESS BASIS)**

1.	The following is added to **SECTION II – WHO IS AN INSURED:**
............
c.	Any person or organization using or legally responsible for the use of any golfmobile loaned or rented to others by you or your concessionaires, but only with respect to their liability for "bodily injury," "property damage" or "personal and advertising injury" caused by the use **of such golfmobile.**

See, **C.039**.

36.	CHARLES SPANGLER, who is a "person" defined by the policy, was a permissive user of a "golfmobile," as defined by the policy, and therefore, CHARLES SPANGLER was an insured pursuant to the underlying TRAVELERS policy by *definition* on the date of the tort event. Id., and **C.039**.

37.	Despite the title in the header of this provision of the policy indicating "(EXCESS BASIS)," there is no language excluding, limiting, or changing CHARLES SPANGLER'S status as an insured pursuant to the underlying policy on a primary basis. Therefore, CHARLES SPANGLER is an insured pursuant to the policy on a primary basis pursuant to the standard policy language. Such coverage can only be changed by another provision or endorsement that excludes or limits coverage in the policy.

38.	As bodily injury and wrongful death arose from the use of the golfmobile, as defined in the policy, a covered claim was triggered by the demand against CHARLES SPANGLER made by THE ESTATE OF CHARLES HENNINGSEN. Id., and **C.014.**

39.	TRAVELERS has a duty to defend and indemnify pursuant to the terms, conditions, and endorsements of the underlying policy by the common policy language as well as the language found in the **XTEND ENDORSEMENT.** Id.

      **(ii)    The Underling AMICA Policy**

40.    The AMICA policy's insuring agreement provides:

**A.  Coverage E – Personal Liability**
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an **occurrence** to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an insured is legally Damages include prejudgment interest awarded against an insured; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the occurrence has been exhausted by payment of a judgment or settlement.

<u>See</u>, **A.048.**

41.    The broad language of the insuring agreement provides that AMICA will provide coverage for all claims unless specifically excluded. Thus, the underlying AMICA policy was triggered by the demand against CHARLES SPANGLER made by THE ESTATE OF CHARLES HENNINGSEN.

42.    The underlying TRAVELERS policy and the underlying AMICA policy each provide coverage for "bodily injury" arising out of an "occurrence" for the benefit of CHARLES SPANGLER.

43.    Neither of the underlying policies exclude coverage for bodily injury arising from the use of a golf cart.

44.    TRAVELERS and AMICA each possess a contractual duty to respond to the claims made by THE ESTATE OF CHARLES HENNINGSEN. <u>See</u>, **A.048, C.014, & C.039.** Thus, it is necessary to examine the **"Other Insurance"** language of each policy to determine the priority of coverage of each policy as each policy is obligated to provide benefits arising from the November 7, 2020 tort event. The language of the policies determine whether one policy is primary over the other or whether both are excess or whether both are primary.

      **B.    The "Other Insurance" Provisions of Each Policy Control the Priority and Sequencing of Coverage By and Among the Policies**

45.    The **Other Insurance** provision in the underlying TRAVELERS policy provides standard policy language as follow:

**4 Other Insurance**
If valid and collectible other insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as described in Paragraphs a. and b. below. As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:
(i)   Another insurance company;
(ii)  Us or any of our affiliated insurance companies....
(iii) Any risk retention group; or
(iv) Any self-insurance method or program, in which case the insured will be deemed to be **the provider of other insurance.**

Other insurance does not include umbrella insurance, or excess insurance, that was bought specifically to apply in excess of the Limits of Insurance shown in the Declaration. As used anywhere in this Coverage Part, other insurer means a provider of other insurance. As used in Paragraph c. below, insure, means a provider of insurance.

**a. Primary Insurance**
This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we shall share with all that other insurance by the method described in Paragraph c. below, except where Paragraph d. below applies.

**b.   Excess Insurance**
**(1)** This insurance is excess over:
    **(a)**   Any of the other insurance, whether primary, excess, contingent or on any **other basis:**
        **(i)**   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
        **(ii)**  That is insurance for "premises damage";
        **(iii)** If the loss arises out of the maintenance or use of aircraft. "autos" or watercraft to the extent not subject to any exclusion in this Coverage Part that applies to aircraft, "autos" or watercraft;

        **(iv)** That is insurance available to a premises owner, manager or lessor that qualifies as an insured under Paragraph **4. Of Section II –** Who is an insured, Except when Paragraph **d.** below applies; or
        **(v)**  That is insurance available to an equipment lessor that qualifies as an insured under Paragraph **5.** Of Section **II –** who Is An Insured, except when Paragraph **d.** below applies.
    **(b)**   Any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance

See, **C.028.**

46. The underlying TRAVELERS policy covers liability arising from use of a golfcart via its common policy language, and coverage is primary unless changed by the **Other Insurance** provision. Id.

47. **The XTEND ENDORSEMENT**, however, changes the proffered coverage as follows:

**2.** The following is added to Paragraph **4.b.,**
**Excess Insurance, of SECTION IV -**
**COMMERCIAL GENERAL LIABILITY**
**CONDITIONS:**
This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis that isavailable to any person or organization using or legally responsible for the use of any golfmobile loaned or rented to other by you or your concessionaires.

See, **C.039.**

48. The excess language found in the endorsement converts the TRAVELERS policy from providing primary coverage for bodily injury arising from the use of a golf cart to an obligation to provide coverage that is "excess" <u>when there</u> is other available insurance such as AMICA.

49. As AMICA is "other insurance" relative to TRAVELERS, it is necessary to examine the language of the AMICA policy to determine priority of coverages between the two-(2) underlying policies.

50. By function of the following limiting language found in **SECTION II – CONDITIONS** of the underlying AMICA policy, the AMICA policy also provides excess coverage for bodily injury when "other insurance" such as TRAVELERS is available:

**H. Other Insurance**
This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

See, **A.53.**

- **The Language of Each Underlying Policy's "Other Insurance" Provision is "Mutually Repugnant" Resulting in the Pro-ration of Each Policy**

51. Each of the respective underlying polices, both AMICA and TRAVELERS, utilizes language that deems each to be "excess" over the other.

52. Each policy purports to be excess over the other policy, but both polices cannot be excess at the same time. The policy language cannot be read in concert, and the policy language cannot be reconciled with one another.

Page 10 of 17

53. The **Other Insurance** provisions of each policy are "mutually repugnant" because both policies by definition attempt to transfer risk to the other policy when there is other available coverage.

54. As each policy contains "other insurance" clauses, which state that its policy will be excess over other collectible insurance, each respective **"Other Insurance"** clause in the respective policies *cancel each other out,* which results in apportionment of the policies on a pro-rata basis determined by the policy limits in relation to the loss. *See,*. Allstate Ins. Co. v. Executive Car & Truck Leasing, 494 So. 2d 487 (Fla. 1986) Motor Vehicle Casualty Co. v. Atlantic National Insurance Co., 374 F.2d 601 (5th Cir. 1967); Quinlan Rental and Leasing, Inc. v. Linnel, 484 So.2d 630 (Fla. 2d DCA 1986). (Emphasis supplied.)

55. The TRAVELERS policy, bearing policy number Y-660-2R382601-TIA-20, i.e., the underlying TRAVELERS policy, bears policy limits of $1,000,000.00 for each occurrence.

56. The underlying AMICA policy, bearing policy number 61070921FF, bears policy limits of $300,000.00 for each occurrence for personal liability.

57. The policies pro-rate the sharing of loss as required under Florida law based on the policy limits in relation to the loss as calculated as follows:

| Travelers | $1,000,000.00 | 76.92% |
| AMICA | $300,000.00 | 23.08% |
| **Total Primary** | **$1,300,000.00** | **100.00%** |

58. TRAVELERS is responsible for (76.92%) of the underlying defense costs and indemnity benefits while AMICA is responsible for providing (23.08%) of the underlying defense costs and indemnity benefits in a pro-rata calculation in relation to the tort event, i.e., the claim of THE ESTATE OF CHARLES HENNINGSEN.

59. The two underlying policies "cancel each other out" yielding a pro-rata sharing by and among the underlying policies.

60. Each underlying policy must be exhausted before either excess policy is triggered.

C.  **Each Excess Policy Provides Coverage Over and Above the Primary Policies, but the Excess Policies Pro-rate by and among Each Other**

61. The TRAVELERS EUP or "excess policy" is a true excess or umbrella policy because the plain language indicates that it is applicable only upon exhaustion of underlying insurance:

> SECTION I – COVERAGES
> A. COVERAGE A – EXCESS FOLLOW-FORM LIABILITY
> 1. We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage A of this insurance applies, provided that the "underlying insurance" would apply to such damages but for the exhaustion of its applicable limits of insurance. If a sublimit is specified in any "underlying insurance", Coverage A of this insurance applies to damages that are in excess of that sublimit only if such sublimit is shown for that "underlying insurance" in the Schedule Of Underlying Insurance.
> ……..
> <u>See</u>, **Exhibit D.007**

62. The TRAVELERS EUP or "excess" TRAVELERS policy will be excess over the underlying TRAVELERS policy as well as the underlying AMICA policy.

63. The AMICA "PULP" or "excess" AMICA policy is true umbrella policy because the plain language indicates that it is applicable only upon exhaustion of underlying excess or insurance:

> II. **Coverages**
> **Insuring Agreement**
> We will pay damages, in excess of the "retained limit", for:
>
> 1.  "Bodily injury" or "property damage" for which an "insured" becomes legally liable due to an "occurrence" to which this Insurance applies; and
>
> ……

  O. "Retained limit" means:
  1. The total limits of any "underlying insurance"
or any other insurance that applies
to an "occurrence" or offense which:
Are available to an "insured"; or

   Would have been available except for
the bankruptcy or insolvency of an
insurer providing "underlying insurance";
or....

See, **Exhibit B.013.**

64. The TRAVELERS EUP will be excess over the underlying TRAVELERS policy as well as the underlying AMICA policy.

65. The AMICA "PULP" or "excess" AMICA policy will be excess over the underlying TRAVELERS policy as well as the underlying AMICA policy.

66. Each of the respective excess polices, both AMICA and TRAVELERS, utilizes language that deems each to be "excess," i.e., each policy is excess of the underlying policies.

67. To determine whether one of the excess policies will be primary in relation to the other excess policy, it is necessary to examine the **"Other Insurance"** language of each excess policy to determine the priority of coverage of each excess policy in regards to one another <u>but only when</u> both of the underlying policies have been exhausted.

68. The Other Insurance provision of the TRAVELERS EUP or the "excess policy" provides:

**M. OTHER INSURANCE**
This insurance is excess over any valid and collectible
"other insurance" whether such "other insurance" is
stated to be primary, contributing, excess, contingent or
otherwise. This provision does not apply to a policy
bought specifically to apply as excess of this insurance.

See, **Exhibit D.020.**

69. The **Other Insurance** provision purports to make the TRAVELERS EUP excess over primary coverage, but also, the language makes it excess over any other collectible "other insurance" that includes other excess coverage. This means the TRAVELERS excess policy purports to be excess over

other excess policies such as AMICA. Thus, it is necessary to analyze the **Other Insurance** of the AMICA policy to determine whether one excess policy is primary over the other excess policy or whether both are excess policies to one another.

70. The **Other Insurance** provision of the AMICA "PULP" or "excess" policy provides:

F. Other Insurance
The coverage afforded by this policy is excess over any other insurance available to an "insured", except insurance written specifically to be excess over this policy.

<u>See,</u> **Exhibit B.018**.

71. The Other Insurance provision purports to make the AMICA "PULP" excess policy excess over any other primary coverage, but also, the language makes it excess over any other collectible "other insurance." This means the excess policy purports to be excess over other excess policies, which by definition means other excess coverages such as TRAVELERS.

- **The Language of Each Excess Policy is "Mutually Repugnant" Resulting in the Proration of Each Policy as Determined by the Limits of Each Policy in Relation to the Loss**

72. Each of the respective excess polices, both AMICA and TRAVELERS, utilizes language that deem each to be "excess" of both the underlying policies and any other collectible insurance. Thus, each policy is excess over not only the underlying policies, but each purport to be excess over other excess policies.

73. Both excess polices, however, cannot be excess over one another by definition. The policy language cannot be read in concert, and the policy language cannot be reconciled with one another.

74. The **Other Insurance** provisions of each policy are "mutually repugnant" because both excess policies by definition attempt to transfer risk to the other excess policy when there is other available excess coverage.

75. As each policy contains "other insurance" clauses, which state that its policy will be excess over other collectible insurance, each respective "Other Insurance" clause in the respective ***policies cancel each other out***, which results in apportionment of the policies on a pro-rata basis determined by the policy

limits in relation to the loss. *See*, Allstate Ins. Co. v. Executive Car & Truck Leasing, 494 So. 2d 487 (Fla. 1986) Motor Vehicle Casualty Co. v. Atlantic National Insurance Co., 374 F.2d 601 (5th Cir. 1967); Quinlan Rental and Leasing, Inc. v. Linnel, 484 So.2d 630 (Fla. 2d DCA 1986).

76. The TRAVELERS excess policy, bearing policy number CUP-2R416497-20-14, bears policy limits of $10,000,000.00 for each occurrence that is excess the underlying coverage.

77. The excess AMICA policy, policy number 7105092240, bears policy limits of $3,000,000.00 for each occurrence that is excess the underlying coverage.

78. The excess policies pro-rate the sharing of loss as required under Florida law based on the policy limits in relation to the loss as calculated as follows:

| | | |
|---|---|---|
| Travelers | $10,000,000.00 | 76.92% |
| AMICA | $3,000,000.00 | 23.08% |
| **Total Excess** | **$13,000,000.00** | **100.00%** |

Neither policy, however, is triggered until and if there is exhaustion of the underlying limits.

79. TRAVELERS is responsible for (76.92%) of the excess defense costs and excess indemnity benefits while AMICA is responsible for providing (23.08%) of the excess defense costs and excess indemnity benefits in a pro-rata calculation in relation to the tort event, i.e., the claim of THE ESTATE OF CHARLES HENNINGSEN.

## COUNT I – Declaratory Action & Prayer For Relief

80. There is a bona fide, actual, present, and practical need for declaration regarding this dispute of coverages and priority of coverages by and among the Parties.

81. This Declaration concerns a present and ascertainable state of facts and presents a controversy as to a state of facts by and among the Parties including but not limited to the application of the various insurance policies at issue as interpretated by Florida law.

82. All Parties have an actual, present, adverse and antagonistic interest in the subject matter at issue. Thus, the relief sought is not merely the giving of legal advice or the answer to questions

propounded for curiosity as insurance coverage is a proper subject for declaratory relief. <u>Canal Insurance vs. Reed,</u> 666 So.2d 888 (Fla. 1996).

**WHEREFORE**, the Plaintiff, AMICA, respectfully requests that this Honorable Court to adjudicate and decree as follows:

(A)  Whether the TRAVELERS commercial policy of insurance bearing policy number Y-660-2R382601-TIA-20, i.e., the underlying TRAVELERS policy, is primary to the loss and for the claim made by the ESTATE;

(B)  Whether the AMICA policy bearing policy number 61070921FF, i.e., the underlying AMICA policy is co-primary to the loss and for the claim made by the ESTATE;

(C)  Whether the underlying AMICA policy and the underlying TRAVELERS policy both contain excess language;

(D)  Whether the underlying AMICA policy and the underlying TRAVELERS policy are to pro-rate defense and pro-rate indemnity sharing of loss based on the policy limits in relation to the loss as calculated as follows:

- TRAVELERS is responsible for (76.92%) of the underlying defense costs and underlying indemnity benefits;
- AMICA is responsible for providing (23.08%) of the underlying defense costs and underlying indemnity benefits;

(E)  Whether the excess AMICA policing bearing number 7105092240, i.e., the "PULP policy" is excess to coverage afforded by both underlying policies;

(F)  Whether the TRAVELERS umbrella policy bearing policy number CUP-2R416497-20-14, i.e, the TRAVELERS "EUP policy" is excess to coverage afforded by both underlying policies;

(G)  Whether the excess AMICA and the TRAVELERS umbrella policies are both excess to the underlying policies as a function of their respective language therein;

(H)  Whether the excess AMICA policy and the umbrella TRAVELERS policy are to pro-rate excess defense and excess indemnity sharing of loss, but only in the event upon exhaustion of the underlying policies, based on the excess policy limits in relation to the excess loss as calculated as follows:

Page 16 of 17

- TRAVELERS is responsible for (76.92%) of the excess defense costs and excess indemnity benefits;
- AMICA is responsible for providing (23.08%) of the excess defense costs and excess indemnity benefits;

(I)     Such ordering of coverage by this Court by and among the policies that will bind AMICA, TRAVELERS, CYPRESS ASSOCIATES, LLC, CHARLES SPANGLER, CHARLA R. HENNINGSEN as PERSONAL REPRESENTATIVE OF THE ESTATE OF CHARLES HENNINGSEN consistent with the relief and sequencing of coverage delineated in this Petition.

Respectfully Submitted on _____ day of April 2021.

**Cox Law, PLLC**

By: /s/ _____
Sean P. Cox, Esq., CPCU
Florida Bar Number 706760
156 E. Bloomindale Ave.
Brandon, FL 33511-8179
Tel: 813-685-8600
Fax: 813-685-8699
sean@coxlawplc.com
vanessa@coxlawplc.com